WOMEN PRISONERS OF THE DISTRICT OF COLUMBIA DEPARTMENT OF CORRECTIONS, et al., Plaintiffs,

v.

DISTRICT OF COLUMBIA,
et al., Defendants.

CA No. 93–2052.

United States District Court,
District of Columbia.

June 16, 1997.

Peter J. Nickles, Caroline M. Brown, Tracy A. Thomas, Julie K. Abbate, Covington & Burling, Washington, DC, Brenda V. Smith, Deborah L. Blake, Washington, DC, for Plaintiffs.

Maria Amato, Assistant Corporation Counsel, Washington, DC, for Defendants.

## ORDER

JUNE L. GREEN, District Judge.

Upon consideration of the Joint Stipulated Motion of the parties filed January 27, 1997;

the Plaintiffs' February 11, 1997 Motion to Withdraw their January 11, 1997 Motion for a Court Appointed Expert Witness Pursuant to Federal Rule of Evidence 706; the Plaintiffs' March 3, 1997 Motion for Attorneys' Fees and Costs; the Plaintiffs' May 14, Status Report following the U.S. Supreme Court's denial of their petition for certiorari, and Defendants' response thereto, it is by the Court this 16th day of June, 1997,

**ORDERED** that the parties' Joint Stipulated Motion of January 27, 1997 be GRANTED as follows:

1) the Court STAYS any order an award of attorneys fees and costs as set out in the Plaintiffs' March 3, 1997, request, and orders the parties to engage in negotiations over any amount of attorney fees and costs to be awarded; such negotiations shall take place over the next 60 (sixty) days, and the parties shall report back to the Court no later than August 15, 1997 regarding the resolution of this matter.

*ORDER FOR DECLARATORY AND INJUNCTIVE RELIEF*

2) By agreement of the parties, other issues that remain before this Court following the mandate of the United States Court of Appeals for the District of Columbia Circuit are addressed as follows:

1. The Defendants' actions and inactions violated and continue to violate the Plaintiff class members' rights under the Fifth and Eighth Amendments to the United States Constitution, 42 U.S.C. § 1983, and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 (1988).

2. The Defendants are ordered to take all action necessary to remedy and prevent the violations of the Plaintiffs' above-mentioned rights. The Defendants have been ordered, in the prior Orders identified above, to take specific measures in the areas of sexual harassment, education and vocation programs, and environmental and fire safety, as set forth below beginning with paragraph 4.

3. All measures ordered by the Court set forth below should have been completed and effective within six months of entry of the Order, dated December 13, 1994, unless otherwise specified, except that ¶ 19 should have been completed and effective within six months of entry of the Order dated March 15, 1995, and ¶¶ 11, 15, 16, 18, 23, ·26, 27, 29, 33, 50, 58, and 59 should have been completed and effective within six months of entry of the Supplemental Order, dated August 14, 1995.

**I. SEXUAL HARASSMENT**

 4. Within 60 days, the Defendants shall write and follow a Department Order prohibiting sexual harassment involving District of Columbia Department of Corrections (DCDC) employees and women prisoners. The Defendants shall post and circulate the Department Order in accordance with departmental policy.

5. Under this policy the DCDC has the obligation to take appropriate steps to prevent and remedy sexual harassment committed by its own employees.

6. Prohibited conduct under the policy shall be defined as:

a. Sexual harassment which includes:

(1) all unwelcome sexual activity directed by any DCDC employee at a prisoner including acts of sexual intercourse, oral sex, or sexual touching and any attempt to commit these acts; and

(2) all unwelcome sexual advances, requests for sexual favors, and other unwelcome verbal or physical conduct of a sexual nature directed by any DCDC employee at a prisoner; and

b. Invasions of women prisoners' privacy by male employees without a valid penological reason, including the failure of any male employee to announce his presence when entering a female housing unit.

c. Retaliation for reporting complaints of, assisting any individual in making a report of, or cooperating in an investigation of sexual harassment, regardless of the merits or the disposition of the underlying complaint. Retaliatory conduct includes the following actions

taken against a prisoner in response to that prisoner's complaint of sexual harassment or cooperation in the reporting or investigation of sexual harassment: disciplining, changing work or program assignments of, transferring to another facility of, or placing under involuntary protective custody any prisoner.

d. Any breach of confidentiality by any employee concerning any report of sexual harassment.

e. Any interference with investigations of sexual harassment.

7. Penalties for prohibited conduct under the policy shall be determined by the Director of the DCDC within 30 days.

8. Women prisoners shall be able to report instances of sexual harassment through the existing Inmate Grievance Procedure (IGP) as specified in Department Order 4030.1D. The Defendants shall strictly adhere to the Inmate Grievance Procedure and shall establish an Inmate Grievance Advisory Committee (IGAC) as required by Section VII(C) of Department Order 4030.1D.

9. Women prisoners shall also be able to submit IGP's or complaints concerning sexual harassment in any form, orally or in writing, to any DCDC employee, who must submit the information, in writing, to the Warden of the facility within 24 hours of receiving the information. Women prisoners may also submit IGP's or complaints to prisoner representative to the IGAC.

10. The Defendants shall establish a confidential hot line, under the supervision of the Director of the DCDC, through which women prisoners can report allegations of sexual harassment.

11. Failure of an employee to report any allegation of sexual misconduct or any facts and circumstances which would lead a reasonable employee to believe that sexual misconduct is occurring or has occurred shall subject the employee to discipline.

12. Upon receipt of any allegation of an act of unwelcome sexual intercourse or any allegation of unwelcome sexual touching, the Defendants must notify the proper law enforcement agency. The Defendants shall communicate with the law enforcement agency concerning the status of any investigation. The Defendants must periodically document the status of police investigations. The occurrence of a police investigation does not relieve the Defendants of the duty to investigate.

13. The identity of the target of the alleged sexual harassment shall be revealed only to those who have an immediate need to know, including the alleged harasser(s) or retaliator(s) and any witnesses. All parties contacted in the course of an investigation will be advised that any retaliation, reprisal, or breach of confidentiality is a separate actionable offense as provided in the schedule of penalties.

14. Any prisoner who is dissatisfied with any investigation or resolution of an allegation of sexual harassment may appeal to the Director of the DCDC within 15 days of receiving written notice of the outcome of the investigation. The Director must respond within 15 days.

15. The Department shall conduct mandatory training using certified trainers on sexual misconduct for all DCDC employees. A consultant from the National Institute of Corrections (NIC), mutually agreed upon by the parties, shall develop the training plan and material. A "certified trainer" is defined as any person who has completed the "Train-the-Trainer" course developed by the NIC consultant.

a. The training shall include education concerning the Defendants' policies regarding reporting, investigating, and preventing sexual harassment, and the consequences for violating any policy concerning sexual harassment; and

b. All staff who work with female prisoners shall be trained by certified trainers within six months commencing no later than August 30, 1995. After the initial training of staff, the training will be included in the pre-service training of all staff. Annual retraining shall be conducted to refresh staff on the Department Order regarding sexual misconduct.

c. Within one year, selected employees working with female prisoners shall receive a forty-hour training program on working with female offenders. A semi-annual, enhancement training on special issues related to working with female offenders will be offered to selected employees.

16. Commencing no later than August 30, 1995, the Department shall conduct mandatory training on sexual harassment using certified trainers for all women prisoners currently in the DCDC. A consultant from the National Institute of Corrections (NIC), mutually agreed upon by the parties, shall develop the training plan and materials which will instruct women prisoners on the Department Order on sexual misconduct and how to recognize and report sexual harassment. Training sessions for women prisoners on sexual harassment shall be provided within a reasonable time upon a woman's entry in the D.C. Department of Corrections.

17. The Defendants shall make necessary alterations at both the Correctional Treatment Facility (CTF) and the Minimum Security Annex (Annex) within 60 days to ensure that women have privacy in their living, sleeping and shower areas.

## II. OBSTETRICAL AND GYNECOLOGICAL CARE

■ 18. The Defendants shall develop and implement a protocol concerning restraints used on pregnant and postpartum women which provides that a pregnant prisoner shall be transported in the least restrictive way possible consistent with legitimate security reasons. Specifically, the protocol shall provide:

a. The Defendants shall use no restraints on any woman in labor, during delivery, or in recovery immediately after delivery; and

b. During the last trimester of pregnancy up until labor, the Defendants shall use no restraints when transporting a pregnant woman prisoner unless the woman has demonstrated a history of assaultive behavior or has escaped from a correctional facility, in which case, only handcuffs shall be used.

## III. PROGRAM EVALUATION

■ 19. The Defendants shall provide diagnostic evaluations for women prisoners similar to those currently provided for men in the Reception and Diagnostic Unit at CTF to determine women prisoners' needs, interests, and requirements for increased programs and opportunities in education and vocation. The procedure for the needs assessment shall be done by an approved scientific method. These evaluations shall be completed in a manner and time frame equivalent to the males in the diagnostic unit, but shall not exceed 120 days from the date of the female prisoner's transfer to CTF or the Annex. The evaluations shall include educational and vocational testing. The Defendants shall provide women with the appropriate available programming called for by this evaluation within 30 days of completion of the diagnostic evaluation.

20. The Defendants shall coordinate the scheduling of academic educational classes, higher education classes, and vocational training for women in such a manner as to maximize women prisoners' participation in as many areas as possible.

21. The Defendants shall provide sufficient program space so that women prisoners can participate in equal and adequate education and vocation programs and services as compared to men prisoners. The Defendants shall provide at least two additional trailers at the Annex (with functional sanitary facilities) to allow for additional programming activities. Within 30 days, the Defendants may submit for the Court's consideration an alternative to the 2 ordered trailers.

22. The Defendants shall develop and implement quality assurance programs for monitoring program delivery to ensure the continued provision of equal and adequate education and vocation programs to women prisoners.

23. The Defendants shall ensure that women prisoners are escorted to and arrive at educational and vocational programs in a timely manner as scheduled in a manner that

does not prevent the programming staff from performing any of their duties.

24. The Defendants shall provide women prisoners at the Annex with a range of academic education programs that is equivalent to the range of academic programs provided to male prisoners at the Minimum Security Facility (Minimum).

25. The Defendants shall provide women prisoners at CTF with a range of academic education programs that is equivalent to the range of academic programs provided to male prisoners at the Occoquan, Central and Medium facilities.

26. Women prisoners at the Annex and CTF shall be provided with the opportunity for full-time (three hours per day, five days per week at CTF and five hours per day, five days per week at the Annex) basic education to include ABE, GED, and Special Education classes.

27. Women prisoners at CTF shall have access to on-site higher education programs which shall include a four-year B.A. and/or B.S. degree program, an A.A. degree program, and precollege program. At a minimum, bachelor programs shall be offered in one area of study, and associate programs in two different areas of study leading to a degree. Defendants shall comply with the precollege requirement of this provision within 90 days.

28. The Defendants shall offer prisoners financial arrangements for these education programs that are the same as those arrangements available to similarly situated male prisoners.

29. Within 90 days, the Defendants shall provide appropriate substitute teachers or instructors during absences of regular teachers or instructors of more than three working days. The provision of a substitute teacher or instructor shall not result in increasing the class size beyond acceptable community standards for a period of time exceeding 15 consecutive school days.

30. The Defendants shall provide women prisoners at CTF with a range of vocational education programs that is equivalent to the range of vocational education programs provided to male prisoners at the Occoquan, Central and Medium facilities.

31. The Defendants shall provide women prisoners at CTF with two prevocational programs each to be at least six weeks in duration. Prevocational programs include those courses which teach personal development skills, living skills, and/or employment skills such as Employment Techniques, Awareness and Preparation (ETAP) and Lifeskills.

32. The Defendants shall provide women prisoners at CTF with a minimum of four vocational education programs, including the one program currently in place (DocuTech). These programs shall be available to female prisoners of all custody levels. A vocational education program is any program of 12 to 24 months of duration that teaches employable skills and contains both a classroom component and an on-the-job-training component. Two programs shall be operate within 120 days of the entry of this Order.

33. The Defendants shall provide women prisoners at CTF with at least one apprenticeship program as defined by Department order.

34. All prevocational programs, vocational programs, and apprenticeships added for women prisoners at CTF shall have the potential for providing women with job skills marketable in the local labor market. An important consideration in the Defendants' selection of programs shall be the wage-earning capacity upon completion of the program.

35. The Defendants shall conduct affirmative outreach to women during the enrollment period for vocational training. This outreach shall entail DCDC staff meeting with women at least one month before the deadline for program enrollment to inform the women that the new programs are available and to offer a full description of the available programs and any applicable criteria for participation.

36. The Defendants shall ensure that all contractual programs used to provide services to women prisoners are compatible with and fulfill the provisions of this Order.

37. The Defendants shall staff a sufficient number of vocational development specialists

at the Annex in order to conduct testing, classes and counseling.

## IV. ENVIRONMENTAL HEALTH

■ 38. Within one year, the Defendants shall repair or replace the roofs of Annex Dormitories 6 and 7 and retain them in a watertight condition.

39. Within 90 days, the Defendants shall repair the Annex dormitories so as to prevent the entry and refuge of vermin and shall conduct a vermin eradication program to eliminate the present infestation of vermin. The Defendants shall thereafter promulgate and follow an effective vermin eradication program.

40. Within 60 days, the Defendants shall provide each woman prisoner housed in the Annex dormitories at least one vertical locker and one footlocker.

41. Within 30 days, the Defendants shall replace all torn mattresses and pillows at the Annex with clean, untorn, fire-retardant mattresses and pillows. The Defendants shall conduct a regular inspection of all mattresses and pillows and shall, at that time, immediately replace any mattresses that are damaged to a degree that prevents adequate cleaning.

42. The Defendants shall immediately use cart liners or disposable or washable laundry bags to transport laundry at the Annex.

43. For as long as the Annex dormitories are double-bunked, the Defendants shall, within 60 days, provide a minimum of 20 foot candles of prisoner-controlled light to each bunk.

44. Effective immediately, the Defendants shall ensure that all housing units at the Annex are issued a timely, adequate and appropriate amount of cleaning supplies.

45. Within 60 days the Defendants shall connect the toilets and handsinks in every Annex trailer.

46. The Defendants shall continue to provide sufficient and readily accessible sanitary facilities for women in the industries at the Central Facility.

47. Within 90 days, the Defendants shall improve the ventilation at the Annex dormi-

tories, the print shop and the garment shop so that the quality of air in these areas is brought up to an acceptable level.

48. Within 90 days, the Defendants shall install a drainage system at the Annex which will prevent hazardous accumulations of water.

49. The Defendants shall promulgate and follow a written preventive maintenance plan for the Amex dormitories, the Annex trailers, and the Annex grounds.

50. Three times every year, the Defendants shall cause the District of Columbia Department of Consumer and Regulatory Affairs (DCRA) to inspect the Annex for compliance with the requirements of environmental sanitation and maintenance and food service delivery (at the main Minimum compound). If any area is shown to be in compliance after completion of an inspection, the mid-year inspection may be an abatement inspection rather than a full inspection. At a minimum, DCRA shall conduct full compliance inspections at the Annex two times every year. Within 30 days of each inspection, the Warden of Minimum shall obtain the DCRA findings. The Warden shall repair, clean, or otherwise remedy an unsanitary, unsound, or unsafe practice or condition identified by DCRA as soon as feasible but in no event later than 30 days following the receipt of the DCRA report.

51. Within 90 days, the Defendant shall hire a qualified air balancing contractor to service the CTF air handling system so that it provides an acceptable level of air quality to all areas of the facility inhabited by prisoners.

52. In the event that the air balancing and other recent repairs to the heating system at CTF fail to maintain a minimum cell temperature of 65°F in every cell, measured at the perimeter wall, the Defendants shall immediately

a. cease housing women in the end cells of each tier;

b. provide each woman prisoner with two extra blankets, two pairs of thermal underwear, and two pairs of wool socks;

c. explore means of insulating or heating the perimeter walls of the cells; and

d. report back to the Court.

53. The Defendants shall develop and implement an effective rodent prevention program.

54. Effective immediately, the Defendants shall ensure that all housing units at CTF are issued a timely, adequate and appropriate amount of cleaning supplies.

55. The Defendants shall use cart liners or disposable or washable laundry bags to transport laundry between CTF and the Jail.

56. Effective immediately, the Defendants at CTF shall monitor the food temperature and delivery times of all foods, including special diet meals, delivered to the satellite kitchen.

57. The Defendants shall promulgate and follow a written preventive maintenance plan for the CTF that includes maintenance of structures, systems, and equipment.

58. The Defendants shall ensure that the correctional officers inspect all plumbing fixtures daily, and shall ensure that any plumbing fixture that requires repair will be reported immediately upon discovery, and repaired in a timely manner. The Defendants shall maintain logs demonstrating compliance with this requirement.

59. Two times per year, the Defendants shall cause the District of Columbia DCRA to conduct inspections of the CTF for compliance with the requirements of environmental sanitation, maintenance and food service delivery. Within 30 days of each inspection, the Warden of CTF shall obtain the DCRA findings. The Warden shall repair, clean, or otherwise remedy any unsanitary, unsound, or unsafe practice or condition identified by DCRA as soon as feasible but in no event later than 30 days following the receipt of the DCRA report.

## V. FIRE SAFETY

60. Within 120 days, the Defendants shall install and maintain a manual fire alarm system and fire detection system, which covers all areas used by women prisoners at Minimum, including the Annex dormitories.

The fire detection system must include smoke detectors in all sleeping and dayroom areas, and smoke or heat detectors in all other areas. There must be an automatic retransmission of the above systems to a constantly attended location outside of the dormitory buildings. There must also be a control panel to provide emergency power or to send a warning if the system is not operational.

61. The Defendants must repair or replace the fire alarm system in the Administration building, the cafeteria and gymnasium at the Minimum main compound.

62. The Defendants must install a sprinkler system in the Annex dormitories and provide a 20–minute fire-rated enclosure of storage rooms located in both dormitories.

63. The Defendants shall ensure that all bed linens, blankets, and curtains or draperies in the Annex dormitories are of fire-retardant material.

64. Effective immediately, in each Annex dormitory, the Defendants shall conduct fire drills 12 times per year, 4 times per shift, and shall keep written documentation of all such drills.

65. The Defendants shall conduct and document mandatory semi-annual training on fire safety procedures for all correctional officers.

66. Effective immediately at the Annex, and in accordance with Department Order No. 2920.1A, the Defendants shall:

a. conduct weekly inspections of all buildings and grounds for fire hazards, and document such inspections;

b. conduct quarterly inspections of all fire safety equipment, and document such inspections; and

c. ensure that the Institutional Fire Marshal conducts quarterly inspections of the Facility.

67. Effective immediately, and in accordance with Department Order No. 2920.1A, the District of Columbia Fire Department shall conduct fire safety inspections of the Annex not less frequently than every 12 months. The Warden of Minimum shall obtain the Fire Department's report within 10

days and promptly give a copy to the Plaintiffs' counsel. Thereafter, the Warden shall cause any fire safety deficiencies identified in the Fire Department's report to be remedied within 30 days, or shall provide a report to the Fire Department as to why the deficiency cannot be so remedied and provide a plan to remedy the deficiency within a further period of time not to exceed 90 days.

## VI. GENERAL

68. This Order shall continue in full force and effect, absent modification by the Court, until the Defendants have complied with all provisions for 5 years.

### ORDER

Upon further consideration of the Plaintiffs' May 14, 1997 Status Report, and Defendants' response thereto, it is by the Court this 18th day of June, 1997,

**ORDERED** that by agreement of the parties, the Plaintiffs' Eighth Cause of Action alleging violations under local law (D.C.Code Ann. sections 24–442 and 24–425) be dismissed without prejudice.